**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

RODERICK G. TALLEY                                                                      PLAINTIFF

v.                                        CASE NO. 4:19-CV-00622 JM

CITY OF LITTLE ROCK et al.                                                           DEFENDANTS

<u>ORDER</u>

This case arises out of the execution of a no-knock warrant at the residence of Plaintiff Roderick Talley. Talley has sued the City of Little Rock (the City) and three of its detectives, Mark Ison, Robert Bell, and Loni Litchti.

In his complaint,[1] Talley alleges the following causes of action: (Count I) a Fourth Amendment claim to an unreasonable search and (Count II) seizure against Detective Ison pursuant to 42 U.S.C. §1983; (Count III) municipal liability against the City pursuant to 42 U.S.C. §1983 related to its custom or practice of procuring no-knock warrants; (Count IV) claims against Detective Ison pursuant to Article 2, §15 of the Arkansas Constitution and the Arkansas Civil Rights Act (ACRA), Ark. Code Ann. §16-123-101, *et seq* by conducting an unreasonable search; (Count V) an unreasonable seizure; (VI) claims against the City pursuant to the Arkansas Constitution and the ACRA for subjecting Talley to unreasonable searches; (VII) a state claim against Detective Ison for malicious prosecution; and, (VIII) a state law civil conspiracy claim against the three detectives.

The three detectives filed a motion for summary judgment on each of the claims against them. (Doc. No. 76). In responding to the detectives' motion for summary judgment, Talley only responded to the challenge to his claims in Count I and Count IV that the search was

---

[1] Amended and Substituted Complaint, Doc. No. 36

unreasonable because the affidavit submitted to procure the search warrant was invalid. The remaining claims against Detectives Ison, Bell, and Litchti are deemed abandoned. "[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument," because the non-moving party is responsible for demonstrating any genuine dispute of material fact that would preclude summary judgment. *Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 540 (8th Cir.), *cert. denied,* 141 S. Ct. 894 (2020) (quoting *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009)). This leaves only Detective Ison as an individual defendant.

The City also moved for summary judgment on the claims against it. (Doc. No. 80).

Facts

On August of 2017, Talley lived in apartment 217 at the Pleasant Ridge Apartments in Little Rock.[2] Officer Gladina Harris also lived in the apartment complex as a courtesy officer.[3] On August 3, 217, Harris contacted the Little Rock Police Department (LRPD) Street Narcotics Detail to pass along complaints and information she had received linking Talley to the sale of illegal drugs at the complex.[4] First, the manager of Pleasant Ridge, Maria Roy, told Harris that she had received many complaints from the maintenance staff and the leasing agent, Gavin Jones, about Talley's involvement in the sale of drugs. Also the assistant manager, Brandy May, made Harris aware of complaints she had received about Talley selling drugs on the premises. Jones also told Harris himself that he had received similar complaints about Talley and that he

---

[2] The facts in this paragraph are taken from Doc. No. 76-1, pp. 41-43) and Doc. No. 76-2, pp. 9-16.
[3] Harris lived in the apartment complex rent free in exchange for providing a police presence and security services.
[4] In his response to Detective Ison's statement of undisputed facts, Talley does not dispute what Harris told Detective Ison or what the individuals listed in this paragraph told Harris, but he does dispute that the hearsay statements themselves are true.

2

had smelled marijuana when passing by Talley's apartment. Harris was also told by maintenance staff member Michael Bowers that he had seen "drugs" in Talley's apartment when performing authorized maintenance.[5]

After receiving this information from Harris, Detective Ison ran Talley's name in the LRPD records and learned the following history.

    a. On July 10, 2017, a tow truck driver reported that when he was out hooking up a Dodge Challenger that was getting repossessed for nonpayment, Talley unhooked the tow straps and told the driver that he had a gun before fleeing in the Challenger.

    b. On April 8, 2017, the former manager of the Pleasant Ridge Apartments called police and reported that Talley became upset with her over a missing mail package and threatened to return "to shoot up this whole place."

    c. On January 22, 2017, an individual called and reported that Talley had pointed a gun at her and threatened to shoot her and her daughter and to kill her.

    d. In September of 2016, a distant cousin to Talley reported that Talley was following him and his girlfriend as they drove and was "talking shit" to them before pointing a gun out the window at them (all he saw was the end of a barrel and thought it was some type of semi-automatic rifle).

    e. Talley was convicted of second degree assault on September 19, 2016 following an incident in which Talley came to the business of 60-year old Guy Thomas, who installed ankle monitors for local courts, and punched him and knocked him unconscious when Thomas refused to take Talley's ankle monitor off.

---

[5] Talley argues that this statement about finding "drugs" is "vague," "nonprobative"," cursory," "unspecified," and "vacuous." (Doc. No. 84, ¶ 8).

Detective Ison then set up a controlled buy of narcotics from Talley using Kenneth Ray Robinson as the "cooperating individual" (CI) to make the buy. Detective Ison had worked with Robinson before and found him to be reliable. (Doc. No. 76-1, p. 47). On August 3, 2017, Detective Ison searched Robinson and the car he was going to use to make the controlled buy, then he gave Robinson $100 to attempt to buy drugs from Talley. Detective Ison also gave Robinson a cell phone to record the encounter. Detectives Ison, Bell, and Lichti listened live to the cell phone recording through a website as Robinson drove to the apartment complex.

A careful review of the garbled audio and scattered video recording of the call[6] evidenced the following: Robinson getting into a car and driving off, Robinson getting out of the car and walking up the stairs to an area outside of Talley's apartment, 20 seconds or so while nothing happens, then Robinson identifying himself twice (using his nickname "Shoe"), about a thirty second pause followed by a couple of knocks on a door, a pause of about a minute and a half, then someone saying what sounds like "a dolla," a short pause, then someone saying "preciate it," a door closing, then Robinson walking back to the car and driving back to the detectives. When he reached the detectives, Robinson could be heard talking excitedly and the Court can make out the words "crazy" and "don't send me back there" and "cameras."

Detective Ison, Bell, and Lichti attest that when they met back up with Robinson immediately after he went to Talley's apartment complex, he gave them a plastic bag of white powder he said he had bought; it field-tested positive for cocaine. (Doc. Nos. 76-1, Ex. 4-6). Robinson also identified Talley from a picture he was shown by the detectives as being the man that had taken the money and given Robinson the cocaine. *Id.*

Detective Ison then prepared an affidavit for a search and seizure warrant based on this

---

[6] Doc. No. 70, a flash drive.

information and presented it to Judge Hugh Finkelstein the following day. (Doc. 76-1, Ex. 4I). The affidavit states that Detective Ison received information from Officer Harris on August 1, 2017 that there had been numerous complaints about Talley from the apartment complex management in relation to narcotics trafficking. It also sets out the information about the controlled buy using Robinson (who was named in the affidavit as the "cooperating individual") and that Robinson identified Talley as the man who had sold him cocaine.

Detective Ison's warrant application affidavit also stated that Robinson had provided information to the LRPD regarding illicit narcotics trafficking on at least five occasions that lead to felony arrests, and this information provided by him had been proven true "by independent sources and personal observations." Finally, the affidavit stated that in Detective Ison's thirteen years of experience with the police department, "individuals dealing in illicit narcotics have access to firearms and will readily arm themselves to protect this contraband" and he requested that the warrant be "excluded from the knock and announce requirement" to "reduce the risk to the executing officers and occupants" and states "furthermore, the likelihood of the evidence sought being disposed of or destroyed, would also be greatly diminished." (Doc. No. 76-1, pp. 94-95).

Detective Ison's affidavit also contained the following information that was false: Detective Ison stated that during the time Robinson was at the apartment complex, he and the other two detectives observed Robinson (who was not named in the affidavit) walk up and knock on the door of Talley's apartment, that they observed the door of Talley's apartment door open and Robinson having a conversations with someone inside the apartment, and that they saw Robinson then walk away. The fact is that Detective Ison and the other two detectives did not visually observe the actions of Robinson in the area outside Talley's apartment door but rather

5

only had the benefit of the hearing the audio via the cell phone Robinson was carrying. (Doc. No. 76-1, p. 49).

Judge Finkelstein issued the search warrant as requested, which was executed on August 10, 2017 by members of the LRPD Special Weapons and Tactics ("SWAT") unit. The SWAT unit executed the warrant by setting explosives and blowing the door off its hinges where it landed on top of Talley who was asleep on his couch. The entry, while dramatic, did not cause any personal injury to Talley. The search yielded two plastic baggies of marijuana and three digital scales. Talley was cited for misdemeanor possession of marijuana, but the case was ultimately nolle prossed.

### III. Detective Ison's Motion for Summary Judgment

In response to Detective Ison's motion for summary judgment, Plaintiff narrows his claim of an unconstitutional search down to whether the warrant application demonstrates probable cause if the false statements are excised from the affidavit. Detective Ison argues that he is entitled to qualified immunity on the Fourth Amendment claim against him.[7] To resolve this issue, the Court undertakes a two-part inquiry to determine: (1) whether the facts determined most favorably to the plaintiff make out a violation of a constitutional right, and (2) whether that right was clearly established at the time of the challenged conduct. *Masters v. City of Indep., Missouri*, 998 F.3d 827, 835 (8th Cir. 2021); *Watson v. Boyd*, No. 20-1743, 2021 WL 2671317 (8th Cir. June 30, 2021).

The second prong is clearly established and was so at the time of the search in August of

---

[7] The analysis of Talley's Fourth Amendment claim will apply equally to the ACRA claims. *See Rainey v. Hartness*, 5 S.W.3d 410, 415 (Ark. 1999) ("Article 2, § 15, of the Arkansas Constitution is virtually identical to the Fourth Amendment, and we interpret it in the same manner as the United States Supreme Court interprets the Fourth Amendment.)

6

2017. "The Fourth Amendment protects 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures' and provides that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *United States v. Koons*, 300 F.3d 985, 990 (8th Cir. 2002); U.S. CONST. Amend. IV. Talley had a constitutional right to be free from having a warrant issued and a search conducted in the absence of probable cause.

Next the Court must determine if this right has been violated when the facts are viewed most favorably to Talley. Where the challenged search was conducted pursuant to a warrant, the Court looks to the Supreme Court's opinion in *Messerschmidt v. Millender*, 565 U.S. 535 (2012). "[A] warrant generally confers a "shield of immunity" to officers acting within the scope of its authority" on the premise that "where a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Kiesling v. Holladay*, 859 F.3d 529, 533 (8th Cir. 2017) (quoting *Messerschmidt* at 546-548). However, the Court in *Messerschmidt* acknowledged the "exception allowing suit ... where the warrant was 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " 565 U.S. at 547 (quoting *United States v. Leon*, 468 U.S. 897 (1984)). At the same time, *Messerschmidt* emphasized that "the threshold for establishing this exception is a high one, and it should be." *Id.*

"Probable cause exists, if under the totality of the circumstances, a showing of facts can be made sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." *United States v. Wallace,* 550 F.3d 729, 732 (8th Cir.2008) (citations and internal quotation marks omitted). If a police officer deliberately or recklessly makes false

7

statements to demonstrate probable cause for a warrant, the warrant may be invalidated under *Franks v. Delaware,* 438 U.S. 154 (1978). To establish a *Franks* violation, a plaintiff must prove: "(1) that a false statement knowingly and intentionally, or with reckless disregard to the truth, was included in the affidavit, and (2) that the affidavit's remaining content is insufficient to provide probable cause." *Williams v. City of Alexander, Ark.*, 772 F.3d 1307, 1311 (8th Cir. 2014) (citing *Franks*).

The Court finds that the statements contained in the warrant affidavit regarding what Detective Ison and the other detectives visually observed when Robinson went to make a controlled buy were false and, viewing the evidence most favorably to Talley, were recklessly included by Detective Ison. Detective Ison admits these statements were wrong and clarifies that what he knows about the events in the area around Talley's door were obtained by audio input and not visual. (Doc. No. 76-1, pp. 48-49).

However, even with this information stricken from the affidavit, sufficient facts were provided to establish probable cause. Absent the false statements, the affidavit included the following facts, facts that Talley offers no evidence to dispute: (1) Officer Harris, who resides in Talley's apartment complex, reported to Detective Ison "that the management of this complex has had numerous complaints on Roderick Talley in relation to narcotics trafficking;" (2) a controlled buy had been set up at Talley's apartment using a CI (Robinson); (3) Robinson and his car had been searched for drugs and then he was sent to the apartment complex with $100 cash to try to purchase narcotics from Talley; (4) the detectives followed Robinson to the apartment complex and then followed him to a designated meeting place when he left; (5) Robinson then handed Detective Ison a bag of white powder; (6) Robinson reported to the detectives that he had gone to 11700 Pleasant Ridge Road, apartment 217, knocked on the door and then spoke with

8

someone through the door telling them that he wanted $100 worth of cocaine and that a black man opened the door, took the money, and then handed Robinson a bag of white powder; (7) Robinson was showed a photograph of Talley and identified him as the man who had taken the money and given him the bag of white powder; (8) Detective Ison field-tested the white powder and it was positive for cocaine. These facts in the affidavit are sufficient to establish a fair probability that evidence of a crime would be found in a search of Talley's apartment.

In addition to challenging the affidavit statements of what Detective Ison had visually observed, Talley challenges the existence of probable cause on the basis that Robinson was not a reliable informant. "The statements of a reliable confidential informant are themselves sufficient to support probable cause for a search warrant. The reliability of a confidential informant can be established if the person has a history of providing law enforcement officials with truthful information." *United States v. Mayweather*, 993 F.3d 1035, 1044 (8th Cir. 2021), *reh'g denied* (May 19, 2021) (quoting *United States v. Wright*, 145 F.3d 972, 975 (8th Cir. 1998)). "Information may be sufficiently reliable to support a probable cause finding if it is corroborated by independent evidence." *United States v. Knutson*, 967 F.3d 754, 758 (8th Cir. 2020) (quoting *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013).

The warrant affidavit regarding Robinson's reliability states:

> Affiant states that the same said reliable cooperating individual mentioned in Fact one (1) has provided information to the Little Rock Police Department pertaining to illicit narcotics trafficking in the Little Rock, Pulaski County area on at least five (5) occasions that has led to numerous felony arrests. Information provided by the same said reliable cooperating individual has been proven true and correct by independent sources and personal observations.

(Doc. No. 76-1, p. 94).

Detective Ison has established that in August 2017, Robinson was on the list of approved CIs. (Affidavit of Major Kenneth Temple, LRPD, Doc. 90-1, p. 12). He has also shown that at

9

the time he submitted the warrant affidavit, Detective Ison had personally worked with Robinson as a CI in multiple cases involving controlled drug buys and that Robinson had proven to be reliable. (Doc. No. 76-1, p. 47; Doc. 90-1, p. 14). Talley offers no proof to dispute this evidence.

In his response, Talley presents evidence that Robinson had a significant criminal history. This is not disputed. He also challenges Robinson's reliability by including the handwritten notes of detective Nathan McCarrol in a different criminal case regarding a Juangelico Boykins with the notation on September 27, 2018 that "Detective Rob Bell told me that after the arrest of D, LRPD found out that the CI lied to law enforcement re: the 'control buy.'" (Doc. No. 84-4, p. 6). It is not clear who the CI referred to in these notes is,[8] and even assuming it was Robinson, this notation occurred over a year after the controlled buy set up in the present case. Detective Ison does not dispute that Robinson's reliability later became an issue and offers evidence that Robinson was "deactivated as a CI sometime in 2018 and was last used in that role in May of 2018." (Doc. No. 90-1, p.2-4). This information is not material to the issue of whether Robinson's statements could form a reliable basis to establish probable cause in August 2017.

Talley has produced video evidence taken from his own apartments security cameras that dispute the facts of the alleged drug buy as recounted by Robinson. (Doc. No. 92). Contrary to Robinson's version of events, Talley's evidence shows that he was not at his apartment at the time of the alleged controlled buy on August 3, 2017 (Doc. No. 85-5, affidavit of a co-worker) and that no one came to the door of his apartment when Robinson knocked. (Doc. No. 92).

---

[8] Talley's declaration states that "I learned that Detective Robert Bell had been informed by Kenneth Robinson that Robinson had lied about a controlled buy that allegedly occurred about a month prior to August 3rd, 2017. Detective Bell had been informed of the lie after the suspect, Juangelico Boykins was arrested, and Boykins was arrested on or before July 13, 2017." (Doc. No. 85-1, p. 4)

However, this evidence is not material to the issue of whether probable cause was demonstrated in the affidavit for the warrant.

For these reasons, the Court finds that Plaintiff has not shown that his Fourth Amendment rights were violated, and Detective Ison's motion for summary judgment is granted both on the merits of the unconstitutional search claim and as to his assertion of qualified immunity.

The City's Motion for Summary Judgment

Under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) and its progney, a city may be liable under § 1983 for a constitutional violation if the violation resulted from an official municipal policy or an unofficial custom or practice. However, "[t]his circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) (quoting *McCoy v. City of Monticello,* 411 F.3d 920, 922 (8th Cir.2005). See also *Whitney v. City of St. Louis, Missouri*, 887 F.3d 857 (8th Cir. 2018), collecting cases on this issue.[9]

Since the Court has found that Detective Ison did not violate Talley's Fourth Amendment right to be free from an unreasonable search, there can be no municipal liability. The City is entitled to summary judgment for this reason alone.

Nonetheless, looking at Talley's response to the City's motion for summary judgment, he has alleged that the City has an unconstitutional custom of allowing its officers to submit

---

[9] "*Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) ("Because we conclude that Officer Hinman did not violate Malone's constitutional rights, there can be no § 1983 or *Monell* liability on the part of Chief Thomas and the City."); Sitzes v. City of W. Memphis, 606 F.3d 461, 470 (8th Cir. 2010) (agreeing with district court that plaintiffs' claims "could not be sustained absent an underlying constitutional violation by the officer"); Sanders v. City of Minneapolis, 474 F.3d 523, 527 (8th Cir. 2007) ("Without a constitutional violation by the individual officers, there can be no § 1983 or Monell ... municipal liability.")." *Id.* at 861.

affidavits for no-knock warrants using "nothing more than boiler plate language" rather than showing particular circumstances to justify a no-knock entry. He attached over 900 pages of warrant applications to his response (Doc. No. 86-1 through -4) and excerpts three paragraphs of one of the warrant applications that contain the same language as that found in Detective Ison's challenged affidavit. Were it to ignore the absence of individual liability as to Detective Ison—and the fact that Talley failed to respond in any way to the no-knock arguments submitted by Ison—and address the merits of Talley's claims against the City, the Court would agree with the City that Talley has failed to establish that the City had notice of a pattern of unconstitutional conduct and failed to act upon it.

## Conclusion

The Motion for Summary Judgment filed by Detectives Ison, Bell, and Lichti (Doc. No. 76) and the Motion for Summary Judgment filed by the City (Doc. No. 80) are GRANTED. A separate judgment will be entered for the defendants.

IT IS SO ORDERED this 13th day of July, 2021.

_____
UNITED STATES DISTRICT JUDGE